

# THE ATTORNEY GENERAL
# OF TEXAS

JOHN L. HILL.
ATTORNEY GENERAL.

AUSTIN, TEXAS 78711

March 30, 1976

The Honorable Hugh C. Yantis, Jr.   Opinion No. H-805
Executive Director
Texas Water Quality Board          Re:  Does the Water
P. O. Box 13246, Capitol Station   Quality Board have the
Austin, Texas   78711              power to set water quality
                                   standards for waters
                                   occupying privately owned
                                   beds and to prevent waste
                                   discharges from entering
                                   privately owned beds?

Dear Mr. Yantis:

We do not resolve disputed questions of fact, and for purposes of this opinion, we assume, but do not decide, that the following explanation you furnish is correct:

> The Brownsville Navigation District, upon adequate authority, applied to the Water Quality Board for a permit to discharge an average of one million gallons of waste per day from the proposed Fishing Harbor sewage treatment plant to be located adjacent to the Brownsville Ship Channel. The discharge, however, will originally be made into San Martin Lake, which is about 3,500 acres in size. The lake, which connects with the Brownsville Ship Channel, occupies a bed owned by the District in large part, and in part by several private parties.

In this context, you ask:

> Does the Water Quality Board's authority
> to set water quality standards for the
> water in the state and to issue permits
> authorizing waste discharges into waters
> in the state extend to the waters occupy-
> ing privately-owned beds which connect
> with public waterways, and to discharges
> entering the waters in such privately-owned
> beds.

The navigation district agrees that the Texas Water Quality Board may regulate the discharge of wastes into the Brownsville Ship Channel from San Martin Lake, but contends that it has no authority to regulate the discharge of wastes into San Martin Lake because the lake is private property. In this case the private lake connects with a public waterway. Accordingly, it is necessary to address only that situation, and we need not discuss the authority of the Board to regulate water quality for bodies of water located on private property and which are not connected in any way with a public waterway.

Prior to the enactment of the Texas Water Quality Act of 1967, article 7621d-1, V.T.C.S., the water pollution regulatory laws of the state clearly applied only to public waters and not to private waters and private water beds. V.T.C.S. art. 4444 (repealed); Penal Code, art. 698b (re-pealed); Turner v. Big Lake Oil Co., 96 S.W.2d 221 (Tex.Sup. 1936), affirming Turner v. Big Lake Oil Co., 62 S.W.2d 491 (Tex.Civ.App. -- El Paso 1933); City of Weslaco v. Turner, 237 S.W.2d 635 (Tex.Civ.App. -- Waco 1951, writ ref. n.r.e.). Percolating and surface waters were declared to be "private" and not "public" waters. Turner v. Big Lake Oil Co., supra; Texas Co. v. Burkett, 296 S.W. 273 (Tex.Sup. 1927); City of Weslaco v. Turner, supra; Pecos County Water Control and Imp. Dist. No. 1 v. Williams, 271 S.W.2d 503 (Tex.Civ. App. -- El Paso 1954, writ ref. n.r.e.).

The Texas Water Quality Act of 1967 departed from the pattern of previous acts by defining "water" subject to regulation in terms which now substantially appear in section 21.003(3) of the Water Code:

> 'Water' or 'water in the state' means ground water, percolating or otherwise, lakes, bays, ponds, impounding reservoirs, springs, rivers, streams, creeks, estuaries, marshes, inlets, canals, the Gulf of Mexico inside the teritorial limits of the state, and all other bodies of surface water, natural or artificial, inland or coastal, fresh or salt, navigable or nonnavigable, and including the beds and banks of all watercourses and bodies of surface water, that are wholly or partially inside or bordering the state or inside the jurisdiction of the state. (Emphasis added).

The word "public" is notably absent, and previously unregulated percolating and surface waters are expressly included in the definition.

Section 21.251 of the Water Code specifies:

> (a) Except as authorized by a rule, regulation, permit, or other order issued by the board, or the executive director when authorized by the board, no person may:
>
> > (1) discharge sewage, municipal waste, recreational waste, agricultural waste, or industrial waste into or adjacent to any water in the state;
> >
> > (2) discharge other waste into or adjacent to any water in the state which in itself, or in conjunction with any other discharge or activity, causes, continues to cause, or will cause pollution of any of the water in the state; or
> >
> > (3) commit any other act or engage in any other activity, which in itself, or in conjunction with any other discharge or activity, causes, continues to cause, or will cause pollution of any of the water in the state, unless the activity is under

> the jurisdiction of the Parks and Wildlife
> Department, the General Land Office, or
> the Texas Railroad Commission, in which
> case this Subdivision (3) does not apply.
>
> (b)   In the enforcement of Subdivisions
> (2) and (3) of Subsection (a) of this
> section, consideration shall be given to
> the state of existing technology, economic
> feasibility, and the water quality needs
> of the waters that might be affected.
>
> (c)   No person may cause, suffer, allow,
> or permit the discharge of any waste or
> the performance of any activity in viola-
> tion of this chapter or of any rule,
> regulation, permit, or other order of
> the board.

We are of the opinion that this statute applies to the discharge of wastes into San Martin Lake. The bed of the lake, even though it may be privately owned, connects with the Brownsville Ship Channel. Water connected with a public waterway may be public, although it occupies private land. Diversion Lake Club v. Heath, 86 S.W.2d 441 (Tex. Sup. 1935); Attorney General Opinion H-69 (1973). See also Coastal Industrial Water Authority v. York, 19 Tex. Sup. Ct. Jour. 148 (1976). Whether or not the water in San Martin Lake intermittently is separated from the Channel so that at times it might be characterized as private water, we believe it is within the present statutory definition of water subject to reasonable regulation by the Texas Water Quality Board. Cf. American Plant Food Corporation v. State, 508 S.W.2d 598 (Tex. Crim. App. 1974).

In our opinion, the Water Quality Board does have valid statutory power to set reasonable water quality standards for waters in this state occupying privately owned beds which connect with public waterways, and to prevent harmful waste discharges from entering the waters of such privately owned beds, including San Martin Lake. See Attorney General Opinion H-64 (1973). We do not decide whether the proposed regulations sought to be imposed with respect to San Martin Lake are reasonable.

### S U M M A R Y

The Water Quality Board has the power
to set reasonable water quality standards
for waters in this state occupying privately
owned beds which connect with public waterways,
and to prevent harmful waste discharges from
entering the water in such privately owned
beds.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb